IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. 05-cv-01525-JLK-CBS

LORRAINE M. MARTINEZ,

    Plaintiff,

v.

HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY,
d/b/a The Hartford and also known as Hartford Life Insurance Company, and
WAL-MART STORES, INC., LONG TERM DISABILITY BENEFITS PLAN,

    Defendants.

# ORDER ON FINAL REVIEW OF ADMINISTRATIVE RECORD

This is a case arising under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"). Plaintiff Lorraine Martinez claims that Defendant Hartford Life and Accident Insurance Company ("Hartford") violated ERISA when it issued its final determination letter dated July 2, 2002, upholding its earlier decision in a letter dated January 28, 2002, to deny continued payment of long-term disability benefits to her pursuant to a long-term disability policy issued by Hartford.

Plaintiff asks this court to find that Hartford's determination was arbitrary and capricious, to order Hartford to reinstate her benefits, and to pay any benefits that are "past due," as well as interest, attorney fees and costs. Complaint at 13.[1] Defendant

---

[1] Plaintiff's complaint, originally filed in state court, alleged claims for breach of contract (First Claim) and bad faith denial of insurance coverage (Second

urges this Court to affirm its decision denying disability benefits, dismiss plaintiff's claim, and award it attorney fees pursuant to 29 U.S.C. §1132(g). Answer at 23.

The administrative record was filed on September 6, 2006.[2] The parties simultaneously filed opening briefs on October 13, 2006, and response briefs on November 13, 2006. This case was transferred to my court after our colleague, the Honorable Phillip S. Figa, succumbed to a lengthy illness in January 2008.

I.  **PROCEDURAL BACKGROUND**

As of January 1992, plaintiff was employed by Wal-Mart as a cashier, and was a participant in a long-term disability benefits plan ("Plan") as to which Hartford acted as both the claims administrator and insurer of claims.[3] The undisputed facts show that plaintiff first made a claim for, and received, short term disability benefits after discontinuing work at Wal-Mart in January 1992 (AR 520, 488). By letter dated May 5, 1992, as her short-term benefits were expiring, Hartford requested plaintiff to apply for long-term disability (AR 488). Plaintiff did so, submitting an application by date of July 18, 1992, and describing the nature of her illness as "muscle problems." AR 487.

Plaintiff, as an hourly employee of Wal-Mart was covered as a "class 4" employee under the plan (AR 23). With respect to a class 4 employee, the plan defines Totally

---

Claim). By Order entered September 9, 2005, the First and Second Claims were dismissed by Judge Figa in open court (Dkt. # 6), leaving only her claim under ERISA.

[2] The Administrative Record in this case consists of 526 pages. The Court will refer to the record by the designation "AR" and the bates-stamped page number.

[3] *See* Hartford's Brief at 2.

2

Disabled as meaning "during the elimination period, and for the next 24 months, you are prevented by Disability from doing all the material and substantial duties of your own occupation. After that, and for as long as you stay Totally Disabled, you are prevented by Disability from doing any occupation or work for which you are or could become qualified" by training, education or experience." AR 28. "Disability" under the plan means any accidental bodily injury, sickness or pregnancy (AR 24). The elimination period applicable to plaintiff as a class 4 employee is the first 195 days of any one period of disability (AR 23).

The plan provides, conjunctively, that an insured will be paid benefits under the policy if: 1) she becomes Totally Disabled; 2) remains Totally Disabled throughout the Elimination Period; 3) remains Disabled beyond the Elimination Period; and 4) submits proof of loss satisfactory to the Hartford (AR 31). The plan further provides, disjunctively, that Hartford will pay benefits until the first of the following to occur: 1) the date you are no longer Disabled; 2) the date you fail to furnish proof that you are continuously Disabled: 3) the date you refuse to be examined, if the Hartford requires an examination; 4) the date you die; 5) or when the insured reaches a specified age, which in plaintiff's case would be age 65 (AR 31).

Along with her 1992 application for disability benefits, plaintiff submitted medical records from her treating physician, Dr. George Young, dated July 10, 1992, indicating a diagnosis of "probable fibromyalgia." AR 470. Dr. Young's notes state, however, that despite her condition "with proper treatment she should get some relief and hopefully can

3

return to work." *Id*. Accordingly, Hartford requested additional medical information from plaintiff and Dr. Young, which apparently was not promptly provided so as to delay Hartford's evaluation of plaintiff's claim. Nonetheless, by letter dated October 22, 1992, Hartford notified plaintiff that it would commence paying benefits under a reservation of rights as it continued its evaluation (AR 429).

Hartford also referred plaintiff's records to Dr. Michael Nudelman, an independent consulting physician for review. He noted that no attending physician had asserted that plaintiff was totally disabled, and suggested that if a treating physician did so certify, plaintiff should be referred for a rheumatology IME, or independent medical examination (AR 415).

Hartford continued to press for more medical information from Dr. Young, which was not provided, and by letter dated July 12, 1993, advised plaintiff that it would terminate benefits on July 31, 1993, if the information was not provided (AR 374). By letter dated July 2, 1993, Dr. Young responded to the Hartford's requests, stating that he had not seen plaintiff since October 9, 1992, that while her diagnosis is fibromyalgia, he had no idea whether or not she is disabled, and he was "not in a position to declare her disabled on the basis of any objective medical evidence." AR 372.

By letter dated August 5, 1993, Hartford notified plaintiff that it would deny further benefits beyond July 31, 1993, but gave plaintiff the opportunity to submit additional information if she believed it would affect this determination (AR 368). Plaintiff did submit additional information from a chiropractor (AR 357), and Hartford

4

referred plaintiff for an independent medical examination, as suggested by Dr. Nudelman (AR 354, 348).

In October 1993, Dr. Kenneth Glassman of the Denver Arthritis Clinic, performed the IME on plaintiff and noted that she had "multiple soft tissue trigger point tenderness throughout her entire exam." AR 345. He also noted that she had 80% range of motion in her neck before pain, full range of motion in her lumbar spine, no synovitis, and no sensory deficits or problems on neurologic examination (*id*). He stated, however, that requested laboratory studies and x-rays were not approved, presumably by the insurer, and yet were performed at the expense of the clinic (*id*). Based on his examination, Dr. Glassman gave his medical impression as "chronic fibromyalgia syndrome" and concluded that "[a]t this point in time, I do not feel that this patient was able to perform her duties as a cashier with Wal-Mart and therefore, she is felt to be totally disabled from this occupation." AR 346. By letter dated January 4, 1994, Hartford notified plaintiff that based on the medical assessment by Dr. Glassman it would continue disability benefits based on her current condition through December 31, 1993, and thereafter "subject to policy terms and limitations, as long as you meet the policy definitions of total disability. . ." AR 337.

Thereafter Hartford periodically sought updated medical information from plaintiff. In a claimant questionnaire dated April 7, 2001, plaintiff identified Dr. Ingrid Rule as her treating physician (AR 241). After receiving medical records from Dr. Rule, Hartford requested the doctor to complete a physical capacities evaluation form (AR

205). Dr. Rule completed the form dated August 14, 2001, and returned it to Hartford (AR 196-97). On the physical capacity evaluation, Dr. Rule stated that plaintiff could sit, stand, walk and drive for 8 hours per day; lift one to 10 pounds constantly, 11-50 pounds frequently, and 51 -100 pounds occasionally; that she could perform the activities of climbing, balancing, stooping, kneeling, crouching and crawling frequently; that she could reach, handle, feel and finger either frequently or constantly; that she had the capacity for repetitive use of both hands and feet; and no environmental restrictions (AR 196-97). Dr. Rule further stated that while she had "not had occasion to examine this patient specifically to determine work capacity," she opined that plaintiff could return to work at her regular occupation without restrictions or in lighter duty capacity, as "she was never declared disabled by me." AR 197.

By letter dated August 29, 2001, Hartford requested Dr. Rule to indicate explicitly, by signing a prepared statement, whether she agreed with the statement that plaintiff was capable of performing the work as indicated on the August 14, 2001 physical capacity evaluation, that she did not in the past or currently declare plaintiff disabled (AR 184-85). Dr. Rule signed the prepared statement, adding in her own handwriting that this was "based on the information available to me from my previous evaluations of this patient." AR 184.

By letter dated November 14, 2001, Hartford summarized plaintiff's medical history, informed plaintiff that it had identified other occupations that plaintiff could perform given her physical capacity, and notified her that it was terminating benefits as of

6

that date (AR 161-64). The letter also advised plaintiff that she had the right to submit additional medical information within 60 days, or appeal the decision within 60 days from the date of the letter (AR 164).

By letter received December 20, 2001, plaintiff submitted her appeal of the decision to terminate benefits (AR 157), together with a letter from her husband describing her pain and discomfort (AR 158) and a handwritten note from a Dr. Lee Whittemore, a chiropractor, stating merely "I am treating Lorraine for subluxation of the lumbar spine." AR 159. By letter dated January 28, 2002, Hartford notified plaintiff that it had completed review of her appeal, and stood by the determination to terminate benefits as stated in its letter of November 14, 2001, citing in particular the physical capacity evaluation of Dr. Rule. (AR 154-55). The letter concludes that "[w]e have reached our final determination and your file will remain closed." *Id*.

Apparently not yet deterred, plaintiff in March 2002 requested a blank physical capacities evaluation form, and Hartford provided one similar to the one completed by Dr. Rule (AR 151). Plaintiff thereafter submitted a letter from Dr. Whittemore, her treating chiropractor, dated May 2, 2002 (AR 148-49).

His letter states that his examinations reveal that plaintiff has "significant joint pain and tenderness in the lumbrosacral and sacroiliac regions and moderate joint pain in the thoracic and cervical spines." AR 148. It further states that "there are numerous painful trigger points located in muscle groups throughout the body that correlate with fibromyalgia symptoms." *Id*. The letter opines that plaintiff is "disabled" and "unable to

7

do any kind of repetitive work where there is any more lifting than five pounds involved." *Id*. Dr. Whittemore did not complete the physical capacity evaluation form, but he does state that he disagrees with Dr. Rule's assessment based on "his long standing association with" plaintiff, and concludes that she is unable to sit more than a couple hours at a time stand for more than an hour or perform any bending twisting or lifting (*id*.).

Although Hartford had advised plaintiff that its file was closed, it did consider the letter from Dr. Whittemore. In a response to plaintiff dated July 2, 2002, Hartford noted that while Dr. Whittemore provided current information as to her condition, its decision was based on her condition as of November 2001 (AR 147). It states that the report from Dr. Whittemore does not provide evidence that she was precluded in November 2001 from performing a light occupation (AR 147). The letter again concludes that the appeal is completed and the file "remains closed." *Id*.

Thereafter, plaintiff apparently retained counsel, who in October 2002 forwarded another letter from Dr. Whittemore (AR 145-46). This letter from Dr. Whitemore, actually dated July 31, 2002, states, *inter alia*, that he treated plaintiff since 1999 and in particular during the year 2001, that during the time he treated plaintiff she has been on disability and "unable to work due to the chronicity and severity of her condition" and that in his opinion she is "still completely disabled and unable to work at any gainful employment." AR 146.

By letter dated October 17, 2002, Hartford notified plaintiff that it had received the latest letter from Dr. Whittemore but the appeal on her claim has been completed and the

8

administrative remedies exhausted (AR 144). In a May 16, 2003 letter, plaintiff's counsel requested Hartford to provide a copy of plaintiff's claim file, which was forwarded to him on June 4, 2003 (AR 141). Nearly two years passed before plaintiff's current counsel contacted Hartford by letter dated May 4, 2005, requesting a further review of plaintiff's claim (AR 122). By letter dated June 2, 2005, Hartford declined to reopen plaintiff's file (AR 103). Plaintiff filed her complaint in the Denver District Court on or about June 7, 2005, and the case was timely removed to federal court by Hartford (Dkt. 1). As noted, the only remaining claim seeks a determination under ERISA that plaintiff is entitled to long-term disability benefits.

## II. STANDARD OF REVIEW

There is no dispute in this case that the disability policy gives discretion to Hartford to determine eligibility for benefits and to construe the terms of the Plan (*see* AR 37-38). Therefore, this Court must apply the so-called "arbitrary and capricious" standard of review. *Fought v. UNUM Life Ins. Co. of Am.,* 379 F.3d 997, 1003 (10th Cir. 2004). There is also no dispute here that Hartford had an inherent conflict of interest in that it is both the claims administrator and the insurer.[4] In such situations, where the inherent conflict of interest relates to a determination of whether or not there is coverage for a claimed disability, a less deferential standard must be applied. *See e.g., Panther v. Sun*

---

[4] Plaintiff's Brief at 2; Hartford's Brief at 2.

9

*Life Assurance Co. of Canada*, 464 F. Supp.2d 1116, 1120-21 (D. Kan. 2006). As articulated in *Fought*:

> Under this less deferential standard, the plan administrator bears the burden of proving the reasonableness of its decision pursuant to this court's traditional arbitrary and capricious standard. *See* Kennedy, *Judicial Standard,* 50 AM. U.L.REV. at 1174. In such instances, the plan administrator must demonstrate that its interpretation of the terms of the plan is reasonable and that its application of those terms to the claimant is supported by substantial evidence. The district court must take a hard look at the evidence and arguments presented to the plan administrator to ensure that the decision was a reasoned application of the terms of the plan to the particular case, untainted by the conflict of interest.

379 F.3d at 1006. *See also DeGrado v. Jefferson Pilot Fin. Ins. Co.*, 451 F. 3d 1161, 1167 (10th Cir. 2006). Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decision maker. In other words, it is more than a scintilla, but less than a preponderance. *Rekstad v. U.S. Bancorp*, 451 F. 3d 1114, 1119-20 ( 10th Cir. 2006). It is irrelevant whether the reviewing court would reach the same conclusion.

Accordingly, the appropriate standard of review to be applied to Hartford's determination here is the "arbitrary and capricious" standard of review, as articulated in *Fought, supra*, providing for the reduced deference as described therein due to defendant's admitted conflict of interest. According to *Fought* this is a case where "the district court is required to slide along the [arbitrary and capricious] scale considerably and an additional

reduction in deference is appropriate." 379 F.3d at 1007. The burden is thus shifted "to the fiduciary to justify the reasonableness of its decision." *Id*. at 1006.

## III. PLAINTIFF'S AND DEFENDANT'S POSITIONS

The specific decision at issue in this case is the final determination of Hartford contained in its letters to Plaintiff of October 17, 2002, July 2, 2002 and January 21, 2002, together with its reliance on the reasons set forth in its November 14, 2001 letter to her.

Hartford contends that its determination was fair as it was plaintiff's burden under the policy to demonstrate her continued entitlement to disability benefits and to submit proof satisfactory to Hartford (AR 31, 36). Hartford contends that its determination was reasonable as it was based on the physical capability assessment provided by plaintiff's own treating physician, Dr. Rule (Hartford's Brief at 19). Hartford asserts that it considered, but rejected for valid reasons, the opinions of her chiropractor, Dr. Whittemore.

Plaintiff argues that Hartford cannot reasonably rely on Dr. Rule's assessment because she did not have a basis for making such findings, or at least the report is ambiguous as to whether she had such a basis. Plaintiff submits that Hartford instead should have relied on the conclusions contained in the letters it received from Dr. Whittemore. In her opening brief plaintiff also raises a contention that Hartford underpaid disability benefits to plaintiff because it used an incorrect salary to calculate basic benefits, and an inaccurate amount of SSDI benefits as deductions from the basic

11

benefits (Plaintiff's Brief at 8, 43-44).  I note that these contentions are not raised in plaintiff's complaint.

IV.     **ANALYSIS**

Plaintiff apparently contends that she is disabled due to her having been diagnosed with fibromyalgia.  Fibromyalgia is a disorder "'characterized by achy pain, tenderness and stiffness of muscles, areas of tendon insertions and adjacent soft-tissue structures.'" *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 627 n.1 (10th Cir. 2003) (quoting The Merck Manual 481 (17th ed.1999)).

The medical diagnosis of fibromyalgia does not in and of itself support a finding of disability.  As stated in *Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 877 (9th Cir. 2004), despite a diagnosis of fibromyalgia, the question is whether the condition renders the person unable to work because of it.  It is this latter question that must be resolved by the medical evidence.  In the instant case, Hartford found that plaintiff had failed to submit satisfactory proof of her inability to work.  I cannot find that such determination was unreasonable.

Hartford reasonably requested plaintiff's own treating physician to complete a physical capacity evaluation.  Dr. Rule did so and submitted a completed evaluation form that not only reflected a lack of an objective basis for plaintiff's asserted disability, but also contained voluntarily inserted narrative statements disclaiming any such disability (AR 197).  To be sure, as plaintiff argues, Dr. Rule also wrote that she had not had occasion to examine the plaintiff specifically to determine work capacity, and that

sentence obviously raised some confusion on the part of Hartford. However, Hartford followed up with Dr. Rule to clarify any ambiguity in her findings by asking her to state expressly whether she felt plaintiff was capable of performing the work capacity set forth in the evaluation form (AR 193). Dr. Rule signed the prepared form, and returned it to Hartford, inserting that her opinion was based on the information available from previous evaluations (AR 184). Thus, while Dr. Rule may not have examined plaintiff specifically in August 2001 as to work capacity, she did provide her assessment of plaintiff's work capacity based on previous examinations. Reliance on a treating physician's assessment, while not entitled to special weight in an ERISA case, can hardly be said to be unreasonable.

Moreover, after the evaluation was submitted in August 2001, plaintiff did not submit any other medical evidence to support her claim before Hartford issued its denial letter in November 2001. After Hartford issued the November 2001 letter, which discussed Dr. Rule's physical capacity evaluation, plaintiff did not advise Hartford that Dr. Rule did not examine her. In fact, in her appeal letter of December 20, 2001, plaintiff stated that she had a physical exam by Dr. Rule (AR 157). Although plaintiff later submitted an affidavit in this case in which she states that Dr. Rule did not test her, question her or evaluate her activities in 2001 (Dkt. # 14), that information was not made part of the administrative record and may not be considered. *See DeGrado,* 451 F.3d at 1169.

13

When plaintiff submitted her appeal in December 2001 (AR 158), she did not expressly contest the opinion by Dr. Rule, and submitted only a one sentence note from her chiropractor, Dr. Whittemore (AR 159), which hardly can be said to be medical evidence. After her appeal was denied, she requested a physical capability evaluation form, but never had it completed or returned to Hartford. Not until May 2002, did she submit any medical information from Dr. Whittemore.

What plaintiff submitted in May 2002 did not contain any physical capacity assessment by Dr. Whittemore, but only his conclusion that she was disabled. He did not provide any objective measure on which to base his opinion, nor did he specify the time frame of his opinion or indicate that he had examined the plaintiff. Moreover, although Dr. Whittemore later stated that his opinion was based on his treatment of plaintiff in 1999 and 2001 (AR 146), there is no indication in the administrative record that he submitted medical records from 2001 supporting his opinions.

Furthermore, when plaintiff completed a claimant questionnaire in April 2001 (AR 20-42) she did not list Dr. Whittemore as a treating physician (*see* AR 241). Moreover, the medical records from Dr. Whittemore that are found in the record appear to relate to the period from October 1998 through December 1999 (AR 262-69; 275-78), and not to 2001. Although those records may contain references to complaints of pain or soreness, they do not reference a condition of fibromyalgia nor do they specify evidence of a disability on the part of plaintiff. In fact, a disability questionnaire completed by Dr. Whittemore bearing the date of August 3, 1998 (AR 275-76), indicates that he had

14

insufficient knowledge of plaintiff's ability to stand, walk, sit, carry, push, pull or engage in repetitive activities (AR 276). Thus, I cannot find that it was unreasonable for Hartford to not give weight to the unsubstantiated opinion expressed by Dr. Whittemore.

In addition, despite plaintiff's assertions that Hartford treated her unfairly and evaluated her case in a biased and unreasonable manner, I find that the administrative record indicates the contrary. When plaintiff first claimed disability benefits in 1992 and 1993, Hartford was quite tolerant of plaintiff's failure to timely submit medical records. When she finally submitted records that raised some uncertainty, it referred her to an independent medical evaluator, Dr. Glassman, and it accepted his opinion and paid benefits for several years.

In 2001, when Hartford was advised by plaintiff that she was under the care of Dr. Rule, it requested medical information and ultimately received the physical capacities evaluation of August 2001. Although that evaluation provided no basis for a finding of disability, Hartford did not accept it without checking further with Dr. Rule to confirm that she meant what she had said in the evaluation.

After notifying plaintiff in November 2001 that her benefits were to be terminated, and having received no medical information within the 60 days allowed to appeal, Hartford nonetheless considered the latter from Dr. Whittemore submitted in May 2002 (*see* AR 147). Thus, while plaintiff appears to argue that "procedural irregularities" warrant a further reduction in the level of deference to be given to the administrator's determination, I do not find any evidence of procedural irregularities in the record.

Finally, I find no basis for making an award to plaintiff based on the assertions in her brief that she was underpaid benefits by Hartford due to an incorrect calculation of her basic benefit, or because it erroneously deducted the wrong amounts for the SSDI offset. Although these claims were not expressly raised in plaintiff's complaint, Hartford has responded to them in its response brief setting forth its position as to why the benefits were correctly calculated. Plaintiff's response brief makes no further argument regarding these claims. I have reviewed the documents in the administrative record and find no evidence that plaintiff was either underpaid the basic benefit, or that the SSDI amounts were improperly offset.

## V. CONCLUSION

Defendant's Motion for Judgment on the Administrative Record (Dkt. # 24) is Granted and Plaintiff's Motion for Judgment on the Administrative Record (Dkt. # 23) is Denied. Plaintiff's motion for order to allow oral argument (Dkt. # 29) is Denied. Defendant's request for attorney fees is Denied. Each party shall bear her or its own costs.

The Clerk of the Court is directed to enter judgment for defendant in accordance with this opinion.

Dated this 17th day of June, 2008.

BY THE COURT:

s/John L. Kane
John L. Kane, Senior Judge
United States District Court